## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

|  |  |  |
|---|---|---|
| **MIDWEST GENERATION EME, LLC** | ) | |
| | ) | |
| **Petitioner/Counter-Respondent,** | ) | |
| | ) | **Civil Action No. 08 CV 7189** |
| **v.** | ) | |
| | ) | **Hon. Judge Robert M. Dow, Jr.** |
| **CONTINUUM CHEMICAL CORPORATION** | ) | |
| | ) | **Magistrate Judge Jeffrey Cole** |
| **Respondent/Counter-Petitioner.** | ) | |
| | ) | |
| _____ | ) | |

## CONTINUUM'S ANSWER TO MIDWEST 'S PETITION TO CONFIRM ARBITRATION AWARD AND CONTINUUM'S COUNTER-PETITION TO VACATE AWARD

Respondent/Counter-Petitioner Continuum Chemical Corp., by its attorneys, Law Offices of Ira Gould and Morrison & Mix, hereby files this Answer to the Petition to Confirm Arbitration Award and Counter-Petition to Vacate Arbitration Award, pursuant to §§ 9, 10, and 12 of the Federal Arbitration Act.   In support thereof, Respondent states as follows:

## ANSWER TO PETITION TO CONFIRM ARBITRATION AWARD

1.      Respondent admits the allegations in Paragraph 1 of the Petition to Confirm Arbitration Award.

2.      Respondent admits the allegations in Paragraph 2 of the Petition to Confirm Arbitration Award.

3.      Respondent admits the allegations in Paragraph 3 of the Petition to Confirm Arbitration Award.

4.      Respondent admits the allegations in Paragraph 4 of the Petition to Confirm Arbitration Award.

5.      Respondent admits the allegations in Paragraph 5 of the Petition to Confirm Arbitration Award.

6.      Respondent admits the allegations in Paragraph 6 of the Petition to Confirm Arbitration Award.

7.      Respondent admits the allegations in Paragraph 7 of the Petition to Confirm Arbitration Award.

8.      Respondent admits the allegations in Paragraph 8 of the Petition to Confirm Arbitration Award.

9.      Respondent admits in part and denies in part the allegations in Paragraph 9 of the Petition to Confirm Arbitration Award.  Respondent denies that Continuum only sought $8.3 million in damages, as the amount exceeded $17 million.  Respondent admits the remaining allegations in Paragraph 9.

10.     Respondent admits the allegations in Paragraph 10 of the Petition to Confirm Arbitration Award.

11.     Respondent admits the allegations in Paragraph 11 of the Petition to Confirm Arbitration Award.

12.     Respondent admits the allegations in Paragraph 12 of the Petition to Confirm Arbitration Award.

13.     Respondent admits the allegations in Paragraph 13 of the Petition to Confirm Arbitration Award.

14.     Respondent admits the allegations in Paragraph 14 of the Petition to Confirm Arbitration Award.

15.     Respondent denies the allegations in Paragraph 15 of the Petition to Confirm Arbitration Award.

WHEREFORE, Respondent/Counter-Petitioner requests that this Court deny Petitioner's Petition to Confirm Arbitration Award for the reasons set forth in the Counter-Petition to Vacate Arbitration Award below.


## COUNTER-PETITION TO VACATE ARBITRATION AWARD

### Introduction

1.     Respondent/Counter-Petitioner Continuum Chemical Corporation ("Continuum") seeks to vacate the Award entered in the arbitration of *Continuum Chemical Corporation. v. Midwest Generation EME, LLC,* American Arbitration Association Case No. 51 158 Y 00511 06, pursuant to 9 U.S.C. § 10(a)(2), and remand the arbitration for rehearing before a new arbitration panel selected by the parties and under the auspices of the American Arbitration Association.   There was "evident partiality" on the part of two of the three-member panel of arbitrators in the underlying arbitration proceedings that was the result of an improper business transaction between one of the arbitrators and a key expert witness for Midwest during the arbitration proceeding, and while it was disclosed and consent was sought by the AAA and Panel Member, Continuum had no practical choice but to consent to it.   Further, there were substantial and non-trivial business/professional relationships between two of the arbitrators and the opposing counsel's law firm that were not disclosed by the arbitrators.   These facts and

relationships that should have been disclosed by the two arbitrators were only discovered by Continuum after the Award was entered.  The non-disclosures were in breach of the AAA's applicable rules and Code of Ethics for Arbitrators in Commercial Disputes, as well as the Federal Arbitration Act and applicable law.

**Parties**

2.      Continuum is a Texas corporation, with its principal place of business in Houston, Texas.

3.      Midwest Generations EME, LLC ("Midwest") is a Delaware LLC, with its principal place of business in Chicago, Illinois.

**Jurisdiction and Venue**

4.      This Court has jurisdiction pursuant to 28 U.S.C. § 1332.  There is diversity of citizenship between the parties and the amount in controversy exceeds $75,000.

5.      This case is governed by the Federal Arbitration Act ("FAA"), pursuant to 9 U.S.C. § 2, since the arbitration involves interstate commerce.

6.      The venue is proper pursuant to 28 U.S.C. § 1391(a)(2) because the contract between the parties was executed in this judicial district.

7.      The venue is also proper pursuant to 9 U.S.C. § 9 because the arbitration was held in this judicial district.

**Background**

16.     On October 22, 2004, Continuum and Midwest (the "parties") entered into a contract (the "Contract") whereby Continuum was hired to clean 8 large oil tanks, and which also provided for the sale of certain of the recovered oil.

17.     Article 33.2 of the Contract is a binding arbitration clause which states in relevant part that "all disputes will be decided by arbitration by the AAA or by a mutually agreed upon arbitrator."

18.     On March 31, 2006, Continuum initiated an arbitration proceeding against Midwest with the AAA, seeking damages in the amount of $17 million, plus costs and attorney's fees.  The Demand for Arbitration asserted claims of fraud and breach of contract.   Midwest filed several counterclaims against Continuum for breach of contract.

19.     The AAA submitted to the parties a list of potential arbitrators that included the following individuals:  Stanley P. Sklar, Lorence H. Slutzky, and David E. Muschler (hereafter collectively referred to as the "Panel").   The parties selected these persons as arbitrators, and they served throughout the proceedings.

20.     Each member of the Panel then made mandatory disclosure statements at the outset of the arbitration, pursuant to the AAA Commercial Arbitration Rules. The Panel's disclosures are attached as Exhibit A.

21.     Based on these disclosures, it was decided that these candidates could fairly and impartially arbitrate the case and no objections were offered to their appointment.  The AAA confirmed the appointment of the Panel, as neutral arbitrators, on June 12, 2006.

22.     A hearing was held over a period of months that included 21 days of evidentiary hearings.  The Panel issued an award (the "Award") on November 17, 2008.

23.   The Award was in favor of Continuum on its Demand, in certain respects, and in favor of Midwest on its Counterclaim, in certain respects, as follows:

(i)   $2,713,148.41 and $57,432.41, respectively, in favor of Continuum and against Midwest; and

(ii)   An offset of $1,475,074.52 and $404,074.52, respectively, in favor of Midwest and against Continuum, for a net Award in favor of Continuum of $1,238,073.89.

24.   On December 26, 2008, Midwest filed a Petition to Confirm Arbitration Award ("Petition to Confirm") with this Court, which is attached as Exhibit B.  Continuum has filed this Counter-Petition to Vacate Arbitration Award ("Petition to Vacate") which must be decided prior to the confirmation of the Award, pursuant to § 9 of the Federal Arbitration Act ("FAA").

## Applicable Law – Federal Arbitration Act

25.   Pursuant to the FAA,

at any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award, and thereupon the court must grant such an order **unless the award is vacated,** modified, or corrected.

9 U.S.C. § 9 (emphasis added). Therefore, the Court must address the issue of the Petition to Vacate before the Award is confirmed.

26.   Pursuant to 9 U.S.C § 12, "[n]otice of a motion to vacate, modify, or correct an award must be served upon the adverse party or his attorney within three months after the award is filed or delivered."

27.   Continuum filed this Petition to Vacate, and served it upon opposing counsel, within three months of receiving the Award, in compliance with § 12 of the FAA.

**<u>Evident Partiality Standard</u>**

28.     Continuum now seeks to vacate the Award based on the "evident partiality" of Arbitrators Slutzky and Sklar.

29.     Pursuant to the FAA, a district court "may make an order vacating the award upon the application of any party to the arbitration: Where there was evident partiality… in the arbitrators."  9 U.S.C. § 10(a)(2).

30.     Two standards for "evident partiality" were established in the Supreme Court case of *Commonwealth Coatings Corp. v. Continental Casualty Co.,* 393 U.S. 145 (1968).   The broader standard, set forth in the plurality opinion, states that an arbitrator's failure to disclose any dealings that might create an "impression of possible bias" or "even an appearance of bias" require a finding of evident partiality. *Id.* at 149.  A narrower standard, set forth in the concurring opinion, states that "more than a mere appearance of bias" is necessary, and that an award should only be vacated on the grounds of evident partiality when a "reasonable person would . . . conclude that an arbitrator was partial." *Id.* at 151.  The Seventh Circuit has adopted the narrower "reasonable person" standard set forth in the concurring opinion of *Commonwealth Coating.* The failure to disclose a substantial and non-trivial relationship(s) between an arbitrator and a party or its counsel, or a material witness in the arbitration, would constitute evident partiality. No actual bias need be demonstrated in order for there to be a finding of evident partiality, although actions in the Arbitration or with respect to the award could be pertinent to the Court's inquiry.   The actions of an arbitrator should be reviewed, in this context of evident partiality, non-disclosure and possible bias, in a much more rigid fashion than even those of a judge, since the parties in arbitration agree to forego their litigation rights and remedies, as well as rights to appeal, by opting for arbitration and limited review.

31.     Regardless of which standard this Court chooses to apply, there is clear evidence to support evident partiality in this case.  Further, the circumstances and events which were not disclosed were outside the scope of the normal functions of the AAA and Panel Members in the proceedings, and the Court should therefore scrutinize the non-disclosures and the implications from more closely than what otherwise be the case.

## Events that Justify Vacatur

**I.**     ***Arbitrator Slutzky's Acceptance of a Business Opportunity to Serve as an Arbitrator in a Florida Arbitration with  Midwest's Key Expert Witness, During the Arbitration Proceedings, Demonstrates Evident Partiality on his Behalf.***

32.     Near the end of the hearing, the AAA, on behalf of Arbitrator Slutzky, requested permission from the parties' counsel for Arbitrator Slutzky to be appointed as a paid arbitrator in a separate Florida arbitration.   It was disclosed that Arbitrator Slutzky had already been recommended for the position by one of Midwest's key expert witnesses, Dan Meyer, who was already an arbitrator in that Florida proceeding.  In fact, Continuum understands that Mr. Meyer contacted Arbitrator Slutzky directly to see if he was interested before making contact with the AAA and the parties.   Mr. Meyer had been retained in the past as an expert witness by opposing counsel's law firm.

33.     This request for consent by the AAA and Arbitrator Slutzky put Continuum in a realistically and practically difficult and grossly unfair position: either deny Arbitrator Slutzky a lucrative financial opportunity, before an award was entered in the case, and run the risk of creating "bad feelings" between Arbitrator Slutzky and Continuum that could potentially manifest itself in a resulting award; or allow Arbitrator Slutzky to accept the appointment, which

is what happened, while risking to allow Midwest to gain favor with the Arbitrator.  The AAA and Arbitrator Slutsky put Continuum and its counsel in a no-win situation.

34.     The request for consent should never have been made, and neither Mr. Meyer nor the AAA should have had any contact with Arbitrator Slutzky regarding this matter, during the ongoing arbitration.  This was, therefore, a prohibited contact between Arbitrator Slutsky and Dan Meyer, in which a critical witness in the case was creating an opportunity for an arbitrator to generate income.  This contact also brought with it the implicit offer or suggestion of potential future referrals and therefore a future pecuniary interest for Arbitrator Slutzky.   This action and solicitation also sent the same inappropriate and wrong message to the other Panel Members, who Mr. Meyer knew.

35.     Arbitrator Slutzky's acceptance of the appointment to the Florida arbitration would lead a reasonable person to conclude that there was an appearance of impropriety and bias created, and also clear evidence that would constitute "evident partiality."

## II.      *Arbitrator Sklar's Undisclosed Business Relationships*

36.     Arbitrator Sklar, the Chairperson of the Panel, failed to disclose a substantial, ongoing business and professional relationship(s) between him, his law firm of Bell, Boyd & Lloyd, LLC ("Bell Boyd") and the opposing counsel's law firm of Schiff Hardin.

37.     The Panel made mandatory disclosure statements at the outset of the arbitration, pursuant AAA Rule R-17, which states in relevant part:

> Any person appointed or to be appointed as an arbitrator shall disclose to the AAA any circumstance likely to give rise to justifiable doubt as to the arbitrator's impartiality or independence, including any bias or any financial or personal interest in the result of the arbitration or any past or present relationship with the parties

or their representatives.  Such obligation shall remain in effect throughout the arbitration.

38.     Throughout the arbitration, the Panel was also bound by the AAA/ABA Code of Ethics for Arbitrators in Commercial Disputes.  Canon II § (A)(2) of the Code states a similar standard as AAA Rule R-17 for making disclosures:

> Persons who are requested to serve as arbitrators should, before accepting, disclose: Any known existing or past financial, business, professional or personal relationships which might reasonably affect impartiality or lack of independence in the eyes of any of the parties. For example, prospective arbitrators should disclose any such relationships which they personally have with any party or its lawyer, with any co-arbitrator, or with any individual whom they have been told will be a witness.

Canon II § (C) further states that:

> obligation to disclose interests or relationships described in paragraph A is a continuing duty which requires a person who accepts appointment as an arbitrator to disclose… at any stage of the arbitration, any such interests or relationships which may arise, or which are recalled or discovered.

39.     After the Award was entered, and several conclusions were made that were against the overwhelming weight of the evidence to the contrary, Continuum began to suspect that there was something aside from the evidence that had to account for the Award and that might explain partiality on behalf of some or all of the Panel Members.  Continuum therefore conducted research as to the veracity of the disclosures of relationships made by the Panel Members.

40.     Continuum discovered what they have reason to believe are contacts and relationships that existed between members of the Construction Law Group of Schiff Hardin, Arbitrator Sklar, and a lawyer in Arbitrator Sklar's law firm, which were not disclosed at all, but which were material, substantial and non-trivial, and therefore were required to be disclosed:

- Arbitrator Sklar and Paul Lurie (a member of Schiff Hardin's Construction Law Group) presented together at the College of Commercial Arbitrators 7th Annual Meeting, which was held on October 26-28, 2007 at Millennium Broadway Hotel in New York, New York, which was during the course of the hearing.

- Arbitrator Sklar and Paul Lurie co-authored an article for the ALM Law Journal entitled *Commercial Leasing Law & Strategy,* Volume 20, Number 10, which was published on March 2008, while the parties were preparing their briefs.

- Arbitrator Sklar is the current Treasurer and Paul Lurie is currently on the Amicus of the Committee for the College of Commercial Arbitrators Board & Officers.

- Arbitrator Sklar, Mark Friedlander (Co-Chair member of the Schiff Hardin Construction Law Group), and Josh Leavitt (a member of the Bell Boyd Construction Law Group),  all participated in writing articles for the Practicing Law Institute – Drafting and Negotiating Construction Contracts, in 2008 (an internet based program), which was during the course of the arbitration.

- Mark Friedlander and Arbitrator Sklar are both Past Presidents, and Arbitrator Slutzky is the Current President, of the Society of Illinois Construction Attorneys ("SOICA"), Steering Committee.  Kevin Kolton (counsel for Midwest in the current arbitration and member of Schiff Hardin Construction Law Group) was

elected a Society Member on June 19, 2007.  The members of the SOICA meet on a monthly basis.

- Arbitrator Sklar, Josh Leavitt, Kevin Kolton of Schiff Hardin and Paul Lurie all presented at *What to Do When Construction Projects Go Bad in Illinois,* a seminar which was held on September 18, 2008 at the Holiday Inn in Itasca, Illinois which took place while the Arbitrators were deliberating the case. Arbitrator Sklar, Paul Laurie and Mark Friedlander also co-authored a book of the same name which was published by Lorman Education Services.

- Arbitrator Sklar and Paul Laurie co-authored the *AAA Handbook on Construction Arbitration and ADR,* which was published in August 2007.

- Arbitrator Sklar, Josh Leavitt, and Paul Laurie all participated and spoke at the *Condominiums Opportunity and Pitfalls* seminar, which was held on February 15, 2007.  Arbitrator Sklar was the program's Co-Chair.

- Arbitrator Sklar and Paul Laurie both participated in the *Navigating the Arbitration Roadmap* seminar, hosted by the American Arbitration Association University, on November 6, 2008 in Chicago, Illinois.

- Arbitrator Sklar and Paul Lurie were both presenters at the Real Estate Law Conference *Making Mediation & Arbitration Work in Real Estate Disputes* seminar on November 11, 2008 at the Westin Chicago River North.

- Arbitrator Sklar, Josh Leavitt and Paul Laurie were all members of the 2007 Real Estate Conference Advisory Board, and presented at the ABA Telephone Seminar Live Telephone/Audio Webcast, *Construction Defects in a Time of Financial Crisis,* on October 23, 2007, which was during the course of the hearing.

- Arbitrator Sklar and Paul Laurie were co-developers of four continuing education programs, for non-lawyers, for AAA construction panelists in 2004.  The idea for the programs was developed by Paul Lurie and Stanley Sklar who were both members of the Chicago Construction Arbitration Advisory Committee.

- Arbitrator Sklar and Paul Laurie were presenters at an Arbitration Training Institute seminar, *A Comprehensive Training in Commercial Arbitration,* held in May 2004, at Golden State University, San Francisco, California.

- Arbitrator Sklar and Mark Friedlander co-authored *Construction Law in Illinois*, *2004 Edition*, for the Illinois Institute for Continuing Legal Education, which was also updated in 2007.

- Arbitrator Sklar, Paul Laurie and Kenneth Roberts (counsel for Midwest in the current arbitration and member of the Schiff Hardin Construction Law Group) all presented at the 9th Annual ABA Section on Dispute Resolution, Spring Conference, in April 2007, in Washington D.C.

41.     Arbitrator Sklar has been consistently collaborating on events and activities with members of the Construction Law Group of Schiff Hardin (two of them were named counsel in the arbitration), on a regular basis for the last several years.  This directly contradicts the disclosure statement which does not reflect these contacts and instead suggests a very minimal relationship mostly coming from being adverse on cases.

42.     The events and activities that were discovered are substantial and have been ongoing, and clearly demonstrate a closely-knit series of professional relationships, with multiple pecuniary interests involved, as set forth above.   These would clearly evidence an appearance of bias as well as allowing a reasonable person to conclude that there was partiality on behalf of Arbitrator Sklar, and therefore vacatur of the Award is required.

### III.     *The Award*

43.     Continuum is not urging as grounds for vacatur that there was a mistake of fact or law, even though there were, given the statutory standards that apply.   However, in the context of the grounds urged in the Counter-Petition, it is pertinent to assess the extent to which certain particular aspects of the Award were contrary to the overwhelming weight of the evidence and totally arbitrary and capricious, as they might relate to the non-disclosures and the evident partiality.

44.     The following findings by the Panel were made against the great and overwhelming weight of the evidence to the contrary:

- there was no finding of fraud;

- the finding that there was a waiver/release of all future claims for extra work; and

- the amount of the offsets awarded on the Counterclaim.

- the rulings with respect to the exclusion of certain evidence.

**IV.** ***Continuum's Attempt to Obtain Modified Disclosures***

45.     When presented with a request by Continuum to supplement their disclosure statements, the Panel Members were completely non-responsive and seemed to hide behind what the Panel most likely believes to be, impenetrable arbitrator immunity.  The Arbitrators' and AAA's avoidance of Continuum's request to supplement the disclosures and properly address the issue of possible potential bias, is not itself grounds for vacatur based on evident partiality, but when looked at in conjunction with the surrounding events, it is certainly a factor that must be taken into consideration.

46.     After the Continuum made the post-award discoveries pertaining to Arbitrator Sklar and certain members of Schiff Hardin, Continuum went to the AAA in an attempt to get the Panel Members to voluntarily supplement their mandatory disclosures.

47.     On January 14, 2009, Continuum sent a letter to the AAA requesting that the AAA enforce Rule R-17, and make the Panel supplement their disclosures in regards to the post-award discoveries that were made by Continuum.  The letter that was sent to the AAA is attached as Exhibit C.

48.     Initially, the AAA did not even respond to Continuum's request.  After two weeks had gone by without any response, Continuum made several further attempts to contact the AAA.

49.     When Continuum did finally contact the AAA, they refused to comply with Continuum's request, and simply hid behind the excuse that they no longer had jurisdiction in the matter because the Award had been entered, and Midwest had filed a Petition to Confirm with

the United States District Court.  This was a completely bogus response as the request for information was not a matter of jurisdiction.

50.     Continuum then followed up with an email to the AAA, which is attached as Exhibit D, explaining to the AAA that jurisdiction was a non-issue in Continuum's request. The purpose for Continuum's request was merely to seek information that Continuum was entitled to (i.e. the mandatory disclosures by the Panel Members) as a party that contracted with the AAA to fairly administer the arbitration according to their own rules.

51.     The AAA then passed Continuum's request along to the Panel members, but made no further affirmative effort to make sure that the Panel Members complied with the request.

52.     When given an opportunity to stand by the validity of their initial disclosures and state that no further supplementation was required, the Panel also refused to address the issue and chose to hide behind the excuse that the AAA no longer had jurisdiction on the matter.  The Panels response to Continuum's request, which was made through the AAA, is attached as Exhibit E.

WHEREFORE, Respondent/Counter-Petitioner requests that this Court grant their Counter-Petition to Vacate Arbitration Award, thereby vacating the Award, and remanding the arbitration for rehearing before a new panel.

Respectfully submitted,

CONTINUUM CHEMICAL CORP.


By:  /s/ Douglas K  Morrison
           One of its attorneys


Ira Gould
Ryan Greely
Law Offices of Ira Gould
120 North La Salle Street
Suite 2750
Chicago, IL 60602
312-781-0680

Douglas K.  Morrison
Morrison & Mix
120 North La Salle Street
Suite 2750
Chicago, IL 60602
312-726-0888

## <u>CERITIFICATE OF SERVICE AND E-FILING</u>

The undersigned, an attorney, certifies that on February 17, 2009, a copy of the foregoing **Continuum's Answer to Midwest's Petition to Confirm Arbitration Award and Continuum's Counter-Petition to Vacate Arbitration Award** was E-filed with the Court and sent, via messenger service to the above party to whom this Notice is directed, to the address indicated below.

Kevin Kolton
Schiff Hardin, LLP
6600 Sears Tower
233 S. Wacker Dr.
Chicago, IL 60606

/s/ Ryan Greely_____
Ryan Greely